IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Julius Ervin Underhill | Crim. No. 4:08-cr-00056-TLW-1 |
| v. | |
| United States of America | **ORDER** |

This matter is before the Court on Defendant Julius Ervin Underhill's motions for a sentence reduction pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF Nos. 132 & 138. For the reasons set forth below, his motions are denied.

## BACKGROUND

On January 22, 2008, Underhill was charged in a four-count Indictment with several drug and firearm charges, which arose out of his sale of crack cocaine to a confidential informant. ECF No. 1. He ultimately pled guilty to Count 4, which charged him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). ECF No. 56. On January 21, 2009, Underhill was sentenced as a career offender to 262 months incarceration, followed by a 5-year term of supervised release. ECF No. 72. Underhill filed a direct appeal, and the Fourth Circuit affirmed. *United States v. Underhill*, 392 F. App'x 175 (4th Cir. 2010).

On August 22, 2022, Underhill filed his first motion for compassionate release. ECF No. 132. In that motion, Underhill seeks a reduction in his sentence because, if sentenced today, he would no longer be a career offender in light of

intervening caselaw. *Id.* The Government filed a response in opposition on October 24, 2002. ECF No. 137. One week later, Underhill filed a second motion for compassionate release, which raises the same career offender argument as his first motion. ECF No. 138. The Government filed a response in opposition to Underhill's second motion, to which he has now replied. ECF Nos. 148 & 149. Because Underhill's two motions assert virtually identical arguments, the Court will consider them together, and the Court will address all issues Underhill raises in his two motions.

Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons

("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to Underhill's two motions for compassionate release and the Court's decision, the Court will first review the offense conduct establishing Underhill's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

## I.    THE OFFENSE CONDUCT

Underhill's relevant offense conduct is set forth in paragraphs 8–12 of the Presentence Investigation Report ("PSR") filed in this case. The Court incorporates those paragraphs by reference into this order and will set forth that conduct in further detail here.

On April 25, 2007, a confidential informant working in conjunction with the Myrtle Beach Police Department ("MBPD") arranged to purchase 14 grams of crack cocaine from Underhill. PSR ¶ 9. Before he met Underhill, MBPD Officers wired the confidential informant with audio and video recording devices and gave him $450.00 in marked MBPD funds to purchase crack cocaine. *Id.* ¶ 10.  After being dropped off by the MBPD near Underhill's apartment, the confidential informant walked to the apartment and purchased approximately 14.9 grams of purported crack cocaine from him. *Id.* Later tests from the MBPD drug lab confirmed that he had in fact purchased 13.14 grams of crack cocaine. *Id.*

Two days later, the MBPD attempted to conduct another undercover drug buy from Underhill. *Id.* ¶ 11. Again utilizing the confidential informant, the MBPD sought to purchase 14 more grams of crack cocaine from Underhill. *Id.* The confidential informant was wired with recording devices and provided with $500.00 in MBPD funds ahead of the meeting. *Id.* After the MBPD dropped him off, the confidential informant walked to Underhill's apartment. *Id.* When he returned from Underhill's apartment, the confidential informant told MBPD officers that Underhill informed him that he was out of crack cocaine but that he would be

obtaining more soon and would call the confidential informant when it was available. *Id.*

The MBPD secured a search warrant for Underhill's apartment based on the lab results from the first undercover drug by and Underhill's representation to the confidential informant in the second undercover drug by that he would have more crack cocaine soon. *Id.* ¶ 12. On May 1, 2007, MBPD officers executed the search warrant of Underhill's apartment. *Id.* During the search, Officers apprehended Underhill. *Id.* When asked to identify himself, Underhill was not truthful. *Id.* He told officers that his name was "Devin Hightower." *Id.* Officers later determined that this individual was in fact Underhill and that he lied because he was currently wanted by the Horry County Police Department on charges for assault and battery with intent to kill. *Id.*

During the search of Underhill's apartment, MBPD officers discovered 90 grams of crack cocaine, 28 grams of heroin, a quantity of marijuana, and a Taurus .38 caliber revolver loaded with five rounds of ammunition. *Id.* Officers also uncovered other evidence of drug dealing, including $1,802.00 in cash and drug paraphernalia. *Id.* As a result of the search, Underhill was charged in South Carolina state court with various drug and firearm counts. *Id.*

On January 22, 2008, Underhill was indicted federally on four counts arising out of this conduct. ECF No. 1. Count 1 of the Indictment charged Underhill with possession with intent to distribute and distribution of 5 grams or more of crack cocaine. *Id.* Count 2 charged him with possession with intent to distribute and

distribution of 5 grams or more of crack cocaine and a quantity of heroin. *Id.* Count 3 charged Underhill with being a felon in possession of a firearm, and Count 4 charged him with possessing a firearm in furtherance of a drug trafficking offense. *Id.* As noted, Underhill pled guilty to Count 4 of the Indictment. ECF No. 56. In exchange for Underhill's plea, the Government agreed to drop Counts 1 and 2, which charged him with serious drug offenses, along with Count 3, which charged him with being a felon in possession. *Id.* Underhill was sentenced as a career offender under U.S.S.G.§ 4B1.1(c)(3) to 262 months incarceration, followed by a 5-year term of supervised release. ECF No. 72.

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Underhill's motion for compassionate release, the Court will first review the arguments raised by both Underhill and the Government. See ECF Nos. 132, 137, 138, 147, 148 & 149.

### A.    *Underhill's Arguments in Support of His Compassionate Release*

The crux of Underhill's arguments for compassionate release is his assertion that he is now serving an excessive sentence. ECF Nos. 132, 137, 138, 147 & 149. In support of this argument, Underhill notes that, if sentenced today, he would no longer be sentenced as a career offender in light of subsequent caselaw holding that several of his prior convictions no longer qualify as predicate convictions for career offender status. *See* ECF No. 138 at 38. Thus, he posits that he would be facing a significantly lower sentence today than the 262 months he originally received. *Id.*

Underhill also requests that the Court apply to Counts 2 and 3 of the

Indictment the First Step Act of 2018's retroactive application of the Fair Sentencing Act's modification to the quantity of crack cocaine necessary to trigger statutory mandatory minimums. *Id.*; *see* First Step Act of 2018, Pub. L. No. 115-391, § 404(a), 132 Stat. 5194, 5222; *see* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. Finally, he requests the Court appoint him counsel from the Federal Public Defender's Office in connection with his pursuit of relief under § 3582. ECF No. 132–1. For relief, Underhill asks the Court to reduce his sentence to time served and eliminate his 5-year term of supervised release. ECF No. 138 at 38.

## B. *The Government's Opposition*

The Government asserts four arguments in opposition to Underhill's motions. ECF Nos. 137 & 148. First, the Government asserts that his motions are subject to dismissal without prejudice because Underhill failed to exhaust his administrative remedies. ECF No. 137 at 9–11. Second, the Government argues that Underhill's challenge to his career offender status via a motion for compassionate release is barred by the Fourth Circuit's holding in *United States v. Ferguson*, 55 F.4th 262, 265 (4th Cir. 2022). ECF No. 148 at 5–9. Third, the Government argues that, even on the merits, Underhill's motion fails because he cannot establish "extraordinary and compelling reasons" for a reduction in his sentence. ECF No. 137 at 12–16; ECF No. 148 at 9–12. Fourth, the Government asserts that, even if Underhill could meet § 3582(c)(1)(A)(i)'s "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh heavily against a reduction in his sentence. ECF No. 137 at 16–18; ECF No. 148 at 14–16.

### III.   THE COURT'S REVIEW

The Court will first analyze whether Underhill has exhausted his administrative remedies. It will then address his request for the appointment of counsel before moving on to analyzing whether he has presented "extraordinary and compelling reasons" warranting a reduction in his sentence. Finally, the Court will weigh whether the § 3553(a) factors favor of a sentence reduction.

#### A.   *Exhaustion of Administrative Remedies*

The Government asserts that Underhill's motion must be denied without prejudice because he has failed to exhaust his administrative remedies. ECF No. 137 at 9. The Court may reduce a defendant's sentence under § 3582 only "after [(1)] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [(2)] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). This statute requires a defendant to exhaust administrative remedies prior to seeking relief in federal court. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); *United States v. Monzon*, No. 99-cr-157-DLC, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (denying motion for reduction of sentence because a defendant failed to exhaust his administrative remedies).

Attached to Underhill's second motion is a copy of the request for compassionate release he filed with the warden of his detention facility, FCI

Manchester. ECF No. 138–1. This request states that Underhill seeks a reduction in his sentence because "due to a change in the law, Mr. Underhill is not a career offender [.]" *Id.*[1] He has also provided the warden's denial of his request. ECF No. 138–2. On this record, the Court concludes that Underhill has exhausted his administrative remedies.

**B.**   *Appointment of Counsel*

Before addressing whether Underhill has established "extraordinary and compelling reasons" in support of his motions for compassionate release, the Court will first take up his request that a Federal Public Defender be appointed to represent him in connection with his § 3582(c)(1)(A)(i) motion.

Caselaw holds that "a criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment of counsel for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000). However, the Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

In review of both of Underhill's motions, the Court finds that he is capable—and has proven capable—of requesting compassionate release without the

---

[1] In his letter to the warden, Underhill also asserts other grounds for his compassionate release. He has not raised those arguments in his motions before the Court.

assistance of a Federal Public Defender. Moreover, Underhill has not otherwise established that the interests of justice require the appointment of a Federal Public Defender in this case. Accordingly, the Court denies his request for the appointment of counsel.

### C.    The "Extraordinary and Compelling Reasons" Standard

As noted, Underhill has satisfied the administrative exhaustion prerequisite for filing a compassionate release motion in federal court. Therefore, the Court must determine (1) whether he has established the existence of "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A), and (2) if so, whether granting compassionate release is consistent with the sentencing factors set forth in § 3553(a).

Underhill asserts two grounds which he asserts rise to establishing "extraordinary and compelling reasons" for a reduction in his sentence. They are (1) that he would no longer be a career offender if sentenced today and (2) that, pursuant to the First Step Act, he is entitled to the retroactive application on Counts 2 and 3 of the Indictment of the Fair Sentencing Act's modification to the quantity of crack cocaine necessary to trigger statutory mandatory minimums. The Court will analyze these arguments separately, albeit in reverse order.

   i.    *Section 404(b) of the First Step Act does not provide a basis for establishing "extraordinary and compelling reasons" in this case because Underhill was not convicted of a "covered offense."*

Underhill pled guilty to *only* Count 4 of the Indictment, which charged him with a violation of § 924(c). He was sentenced as a career offender pursuant to

4B1.1 based on this conviction. In his motions for compassionate release, Underhill asserts that his sentence should be reduced in accordance with § 404(b) of the First Step Act because his § 924(c) conviction "coexisted" with an offense covered by the First Step Act, specifically, Count 2, which charged Underhill with distribution of cocaine. ECF No. 138 at 19–20.

Section 404(b) of the First Step Act provides that a sentencing court "may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (citation omitted). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222 (citation omitted).

Section 2 of the Fair Sentencing Act reduced the crack cocaine to powder cocaine ratio from 100-to-1 to 18-1. Fair Sentencing Act § 2, Pub. L. No. 111-220, 124 Stat. 2372 (2010) (codified at 21 U.S.C. § 841(b)(1)). Section 3 of the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of cocaine base. Fair Sentencing Act § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)). Thus, to qualify for relief under § 404(b) of the First Step Act, a defendant must be serving a sentence for a "covered offense," *i.e.*, a conviction in violation of a statute which was modified by sections 2 or 3 of the First Step Act.

Here, § 404(b) of the First Step Act is inapplicable because, although

4:08-cr-00056-TLW    Date Filed 11/27/23    Entry Number 153    Page 12 of 24

Underhill was *charged* with a "covered offense," he was not ultimately *convicted* of a "covered offense." Instead, of being convicted of a "covered" drug offense, Underhill was convicted of a firearm offense—that is a violation of § 924(c). Therefore, § 404(b) of the First Step Act has no impact on his sentence and does not provide a basis for establishing "extraordinary and compelling reasons" for a sentence reduction in this case. Moreover, even if the Court were to conclude § 404(b) provided an "extraordinary and compelling reason" for a reduction in Underhill's sentence, it would still deny his motions based on the § 3553(a) factors.

### ii.  *If sentenced today, Underhill would no longer be career offender.*

Underhill's next argument asserts that he would no longer be a career offender if sentenced today. As a result, he would be facing a significantly lower Guidelines range. The Government concedes that Underhill would no longer be a career offender today but argues that the Court should deny his compassionate release motions because the Fourth Circuit's opinion in *Ferguson* bars him from collaterally attacking his career offender status in this § 3582(c)(1)(A)(i) proceeding. Further, the Government asserts that, even if Underhill's motions are not barred by *Ferguson*, a change in his career offender status does not amount to "extraordinary and compelling reasons" for a reduction in his sentence.

The PSR found that Underhill had three career offender predicates when he was sentenced: two ABHAN convictions and a state conviction in New Jersey for possession of a controlled dangerous substance with intent to distribute. PSR ¶ 32. There is no dispute that today the two ABHAN convictions would no longer be

Page 12 of 24

predicate convictions for career offender status in following the Fourth Circuit's opinion in *United States v. Hemingway*, 734 F.3d 323, 332 (4th Cir. 2013) (holding that South Carolina common law ABHAN is not a Guidelines crime of violence).[2]

The Court will first address the Government's argument that *Ferguson* bars Underhill's challenge to his career offender status. To the extent this request asserts that a sentence reduction is warranted because of an asserted error in the calculation of Underhill's Guidelines range when he was sentenced, the Court denies this request. The Court finds there was no error in his Guidelines calculations at the time he was originally sentenced. In *Ferguson*, the Fourth Circuit has held that, because "habeas is the exclusive method of collaterally attacking a federal conviction or sentence" in cases where the defendant argues it was invalid upon imposition and absent First Step Act relief eligibility, "a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep" the habeas requirements. *Ferguson*, 55 F.4th at 270. Thus, in light of *Ferguson*, a motion for compassionate release is not the preferred basis—and maybe a bar—to challenging an alleged Guidelines error related to Underhill's status as a career offender following *Hemmingway*. *See United States v. Thompson*, No. 1:12-CR-434, 2023 WL 4459604, at *3 (M.D.N.C. July 11, 2023) (finding that defendant's Guidelines challenge in a § 3582 motion to his armed career criminal

---

[2] The Court notes that Underhill has provided documentation showing that his New Jersey conviction for possession of a controlled dangerous substance with intent to distribute was expunged following New Jersey's decriminalization of marijuana. ECF No. 147. However, because Underhill would no longer have the necessary predicate convictions today following the Fourth Circuit's opinion in *Hemingway*, the Court finds that it is not necessary to address the impact of the expungement of his New Jersey distribution conviction on his career offender status.

status was not cognizable outside of § 2255); *United States v. Tillman*, No. CR 1:07-1250-MGL-1, 2023 WL 3231520, at *4 (D.S.C. May 3, 2023) (same); *United States v. Brewster*, No. 16-CR-220, 2023 WL 2656564, at *2 (W.D.N.C. Mar. 27, 2023) (same). However, to the extent that (1) *Ferguson* is not a bar to analyzing the career offender issue Underhill raises, and (2) he is not challenging his career offender status but, rather, asserting that *Hemingway* resulted in a disparity between the sentence he received and the one he would receive today, the Court will consider his disparity argument in connection with his motion for compassionate release. *See McCoy*, 981 F.3d at 274–75 (noting statutory changes in mandatory minimums that occur after sentencing and do not apply retroactively are an appropriate basis for a sentence reduction, when combined with other factors).

In considering Underhill's disparity argument, the Court finds that he would not be a career offender if sentenced today in light of the Fourth Circuit's opinion in *Hemingway*. Given that Underhill would not be sentenced as a career offender, it is necessary for the Court to compare his Guidelines at sentencing to those he would be facing today to determine whether a disparity exists.

The 2007 edition of the Guidelines Manual was used to calculated Underhill's Guidelines at sentencing. PSR ¶ 29. As noted, Underhill pled guilty to Count 4 of the Indictment, which charged him with a violation of § 924(c). Based on his prior convictions, Underhill received 9 criminal history points, which established a criminal history category of IV. *Id.* ¶ 23. However, based on his then-qualifying convictions for two counts of ABHAN and the New Jersey distribution charge, he

was classified as a career offender pursuant to U.S.S.G. § 4B1.1(a). *Id.* ¶¶ 24 & 32. As a result, his criminal history category was increased to VI. *Id.* ¶ 24. Because Underhill was a career offender convicted of only a § 924(c) count, his applicable Guidelines range was determined pursuant to the table found in U.S.S.G. § 4B1.1(c)(3). *Id.* ¶ 32. This table reflected a Guidelines range of 262 to 327 months imprisonment, due to Underhill's qualification for a three-level reduction for acceptance of responsibility. *Id.* ¶ 32. As noted, he was sentenced to 262 months incarceration, followed by a 5-year term of supervised release. ECF No. 72.

Underhill's Guidelines range today would not be driven by his career offender status. Underhill posits that his sentence today would now be driven the Guidelines recalculated based only on his plea to the § 924(c) count. The Court finds this not to be the case because it would result in a disparately *low* sentence in light of the conduct committed. This conclusion flows from the Government's acknowledgement at sentencing that "obviously, [the Government] would not have allowed him to plead to the one gun count had he not been a career offender." ECF No. 81 at 10:8–10. Were Underhill not a career offender at sentencing, the Government would not have offered him a plea on only the § 924(c) count. Instead, as acknowledged by the Government at sentencing, it would have offered Underhill a substantially different plea agreement resulting in a substantial sentence in line with the one received. Accordingly, the Court finds that it is inappropriate to analyze disparity by comparing Underhill's career offender Guidelines at sentencing to what his Guidelines today would be for only the § 924(c) count.

However, the Court concludes that there is a basis to find a potential disparity between Underhill's career offender sentence and the sentence he could receive today if convicted on all, or a combination of, the other counts. As noted, the Fourth Circuit and numerous district courts have held that a disparity in the sentence a defendant received and the one he would be facing today may constitute "extraordinary and compelling reasons." *McCoy*, 981 F.3d at 271; *see also United States v. Brown*, ____F.4th____, 2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023) (noting that "§ 3582(c)(1)(A) allow for 'individual relief' based on a § 924(c) sentencing disparity 'in the most grievous cases.").[3] Accordingly, the Court concludes that Underhill can meet § 3582's "extraordinary and compelling reason" standard based on the an asserted disparity between the sentence he received and the one he could receive today.

---

[3] *See also United States v. Glover*, No. 8:07-CR-00960-JMC-15, 2022 WL 3025753, at *5 (D.S.C. Aug. 1, 2022) ("In this case, Defendant has presented extraordinary and compelling circumstances for compassionate release . . . because Defendant's conviction is no longer a controlled substance offense pursuant to USSG § 4B1.2(b)."); *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (finding that "the retroactive application of Norman fits within the category of extraordinary and compelling circumstances that the Fourth Circuit held that § 3582 was meant to capture"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Owens*, No. 7:10-cr-60, 2022 WL 17821560, at *6 (W.D. Va. Dec. 20, 2022) (52-to-68 month difference warranted compassionate release); *United States v. Naylor*, No. 7:14-cr-00026, 2023 WL 4162280, at *5–6 (W.D. Va. June 23, 2023) (46-month disparity); *United States v. Shaw*, No. 5:13-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (22-month disparity); *but see United States v. Anderson*, No. CR 3:14-604-JFA, 2022 WL 395235, at *8 (D.S.C. Feb. 9, 2022) ("The 21-month difference caused by the removal of the career offender designation is a far cry from the 'gross disparity' of 200 months and 30 years considered in *McCoy*.").

C.  *The Court's Review of the § 3553(a) Factors*

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) ( noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that the § 3553(a) factors weigh against a reduction in Underhill's sentence.

First, the Court concludes that "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against a reduction in Underhill's sentence. *See* 18 U.S.C. § 3553(a)(1). In conjunction with this factor, it is appropriate to separately highlight the facts of the instant offense followed by an accounting of Underhill's criminal history.

The instant offense conduct is outlined in Paragraphs 8–12 of the PSR. The Court incorporates these paragraphs in this order by reference. As outlined in detail above, Underhill sold illegal drugs to a confidential informant. Notably, Underhill distributed drugs while wanted by the Horry County Police Department for assault and battery with intent to kill. During a search of his apartment pursuant to a

search warrant, MBPD officers apprehended Underhill who, when questioned, lied about his identity. Officers also discovered 90 grams of crack cocaine, 28 grams of heroin, a quantity of marijuana, and a Taurus .38 caliber revolver loaded with five rounds of ammunition. Officers also discovered other evidence of drug dealing, including $1,802.00 in cash and drug paraphernalia.

Turning to the second part of § 3553(a)(1), which looks at the "history and characteristics of the defendant," the Court will next review Underhill's prior criminal history. 18 U.S.C. § 3553(a)(1). Before his instant federal convictions, Underhill accumulated a significant—and violent—criminal record. In 2000, at the age of 19, Underhill was convicted of his first ABHAN conviction. *Id.* ¶ 17. This offense arose out of a violent assault whereby Underhill struck the victim with his hands and feet, causing the victim to fall to the ground. *Id.* He then proceeded to violently strike the victim in the face with a beer bottle, severely cutting the victim's face. *Id.* For this violent conduct, Underhill was sentenced to 4 years of incarceration, suspended to 18 months of probation. *Id.* In 2001, Underhill violated his probation for failing to report on three separate occasions, failing to pay supervision fees, failing drug tests, and for failing to follow the instructions of his supervising agent. *Id.* He received a 60-day revocation sentence before being placed back on probation. *Id.* Underhill again violated his probation in 2003. *Id.* This violation arose out of his second ABHAN conviction, which is discussed in detail below. *Id.*

In 2001, Underhill was convicted of simple possession of marijuana in Horry County, South Carolina. *Id.* ¶ 18. He was fined for this offense. *Id.* In 2002, he was again convicted of simple possession of marijuana in Horry County, South Carolina. *Id.* ¶ 18. He served 30 days for this offense. *Id.* Later that year, Underhill was convicted of possession of a controlled dangerous substance with intent to distribute in New Jersey and received a sentence of 2 years of probation. *Id.* ¶ 19.

In 2003, Underhill was convicted of two additional counts of ABHAN. *Id.* ¶ 21. These convictions arose out of Underhill's *shooting* of two individuals with a handgun—despite being prohibited from legally possessing one. *Id.* Underhill first shot a male victim before turning and shooting a female victim. *Id.* For this violent conduct, Underhill was sentenced to 4 years of incarceration on each count, said sentences to run concurrently. *Id.*

After a review of the facts of the instant offense in conjunction with Underhill's criminal history, the Court concludes that the "the nature and circumstances of the offense" weigh heavily against a reduction in his sentence. *Contra Brown*, 2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Here, Underhill, while armed with an illegal firearm, distributed illegal drugs, despite being wanted on state charges. The conduct outlined—especially three convictions for ABHAN where one victim was struck in the face with a beer bottle and the other two victims were shot—makes it clear that Underhill would pose a

great risk to the public if the Court were to reduce his sentence. This conclusion is supported by Underhill's willingness to commit *repeated* violent acts despite serving prior sentences of incarceration. Moreover, Underhill's past criminal history, when coupled with his prior failure to abide by the terms of his probation, shows a distinct lack of respect for the law. Accordingly, for the reasons stated, the Court concludes that § 3553(a)(1) weighs against a reduction in Underhill's sentence.

The Court concludes that the next set of factors, which analyze the kinds of sentences available and the sentencing range established for a defendant's conduct, also weigh against a reduction in Underhill's sentence. *See* 18 U.S.C. § 3553(a)(3)–(4). In considering these factors, the Court gives great weight to the parties' plea negotiations and the resulting plea agreement. *See United States v. Bond*, 56 F.4th 381, 384 (4th Cir.), *cert. denied*, 143 S. Ct. 2596 (2023) noting that "[i]n its order denying compassionate release, the district court balanced the benefit of the plea agreement against the stacked minimum sentence for all charged counts, concluding the sentence remained a fair punishment for [the defendant's] conduct.").

Here, Underhill was named in all four counts in the Indictment. ECF No. 1. The Government sought a significant sentence against him based on his crimes. To accomplish this goal, the Government negotiated a plea agreement whereby Underhill would plead guilty to Count 4, so that he would be classified as a career offender. ECF No. 56.  In exchange for his plea, the Government agreed to drop three of four counts charging Underhill with serious offenses: Counts 1 and 2,

specifically, charging him with serious drug offenses, and Count 3, which charged him with being a felon in possession.

The Government could have sought a sentence based on any of the three dropped counts. As noted, the Government stated at sentencing that it would not have pled Underhill to only the § 924(c) count had he not been designated a career offender. Accordingly, the Government made a plea offer to Underhill, as memorialized in the parties' plea agreement. At that time–over 15 years ago—when negotiating the plea agreement, the Government was fully aware of the *then-existing* sentencing regime, whereby Underhill would be sentenced as a § 924(c) career offender. *See United States v. Ford*, No. CR 0:14-362-JFA, 2021 WL 4555730, at *10 (D.S.C. Oct. 5, 2021) (noting that "[a] retroactive application upsets settled bargains from years ago that were made in good faith."). Accordingly, Underhill pled guilty to one count of using, carrying, and possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing that he was facing a substantial sentence because of his prior convictions. He was also well-aware that three serious charges were dismissed in exchange for his plea. Again, while he was sentenced to 262 months, his sentence would have been much longer had serious charges not been dismissed. *See Bond*, 56 F.4th at 384 (affirming the district court's denial of a defendant's § 3582 motion because a sentence reduction would "disturb the parties' carefully negotiated agreement.").

Moreover, when considering Underhill's extremely violent prior record in conjunction with the instant federal offenses, the Court concludes that the

Government would seek a substantial sentence today. The Government has stated that, but for Underhill's career offender status, it would not have allowed him to plead to one count. It is reasonable to conclude that today the Government would again seek a sentence commensurate with the 262-month sentence originally imposed by requiring a plea to most or all of the charges brought. Accordingly, when considering both the instant offense conduct and Underhill's previously noted prior convictions, there is a limited basis to conclude that a lesser or significantly lower sentence would be imposed today. The Court concludes that §§ 3553(a)(3)-(6) do not weigh in favor of reduction in Underhill's sentence.

The Court has carefully reviewed the records submitted by Underhill in support of his argument that he has been successfully rehabilitated. ECF Nos. 138–4, 138–5, 138–6, 138–7 & 138–8. The records reflect that Underhill has completed programing and educational courses offered by the BOP. However, Underhill's inmate discipline date reveals extensive disciplinary issues while incarcerated. ECF No. 148–1. Specifically, Underhill has received infractions for: (1) mail abuse, (2) possession of drugs/alcohol, (3) phone abuse, (4) possessing a hazardous tool, (5) being in an unauthorized area, (6) use of drugs/alcohol, and (7) assault without serious injury. *Id.* The Court concludes that these disciplinary infractions also weigh against release and show Underhill's continuing disrespect for authority. In sum, Underhill has committed serious offenses, including both the instant drug offenses and his past violent offenses—which involved Underhill shooting two unarmed victims and brutally assaulting a third with a beer bottle. He has

continued to have disciplinary issues while incarcerated. Therefore, the Court concludes his rehabilitative efforts do not outweigh his repetitive contempt for the law which he exhibited before—and now during—his incarceration.

Finally, as noted in *McCoy*, the Fourth Circuit indicated that district courts should "conduct individualized inquires" and consider individual factors specific to each defendant when evaluating a motion for compassionate release. 981 F.3d at 288. Here, the Court has followed that guidance and has based its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. Underhill distributed drugs while armed and wanted on serious state charges. Underhill's conduct was serious and significant. When coupled with both his exceptionally violent criminal record and disciplinary record while incarcerated, the Court can only conclude that Underhill would pose a substantial risk to the safety of the public if his sentence were reduced. Based on the above analysis, the Court finds that the § 3553(a) factors weigh against Underhill's request for relief. A reduction in his sentence is therefore not appropriate.

## CONCLUSION

The sentence imposed in this case was significant. However, the Court finds that Underhill's motions for compassionate release should be denied, for the reasons stated and based on an analysis and balancing of the § 3553(a) factors. The Court concludes that, if Underhill were released, he would pose a significant risk to the public based on the extensive history of violent criminal conduct and significant armed drug activity outlined herein. Accordingly, it is the judgment of the Court

that Underhill's motions for compassionate release, ECF Nos. 132 & 148, are

**DENIED**.

**IT IS SO ORDERED.**

_s/ Terry L. Wooten_
Terry L. Wooten
Senior United States District Judge

November 27, 2023
Columbia, South Carolina